# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

SHONDELL KILLEBREW,

        Plaintiff,

    v.                                Case No. 09-CV-265

SANDY JACKSON, GWEN SCHULTZ,
DEBRA GEMPELER, BENJAMIN HILBERT,
SHAW MARTIN, STEFANY SZEMRAJ,
JESSE JONES, FRANCE MONROE JENNINGS,
JULIE SCHAEFER, KIM SCHMIDT,
SANDY MARKUS, TODD CALLISTER,
MARY SLINGER, RALPH FROELICH,
TAMMY WESTPHAL, ELLEN O'BRIEN,
DR. PAUL SUMNICHT, MARY GORSKE,
PATTY CARRAN, GAIL WATTZ,
CHARLENE REITZ, JOSEPH SUTTON,
and BILLY PONTOW,

        Defendants.

---

# ORDER

The plaintiff, Shondell Killebrew, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 and was granted leave to proceed *in forma pauperis*. The amended complaint (Docket #37) is the operative complaint in this action. Killebrew is proceeding on Eighth Amendment deliberate indifference to a serious medical need and excessive force claims as well as a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, and a claim under Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 794. In addition, the amended complaint

advances a state law medical malpractice claim. The parties have filed cross-motions for summary judgment. These motions will be addressed herein.

## I. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show

that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## II.  BACKGROUND OF THE CASE

On March 17, 2010, Killebrew filed a motion for summary judgment.  (Docket #'s 63-65).  The defendants moved for partial summary judgment on May 20, 2010.[1] (Docket #'s 88-95).  Killebrew filed additional summary judgment materials on June 18, 2010, including a brief, affidavit, and exhibits.  (Docket #'s 104-106).  On July 1, 2010, after receiving Killebrew's signed medical authorization, the defendants filed their supplemental summary judgment materials addressing Killebrew's claims of deliberate indifference.  (Docket #'s 109-121).  The defendants' partial summary judgment motion is, therefore, converted into a motion for summary judgment.

## III.  FACTS[2]

Killebrew was initially incarcerated as a Wisconsin Department of Corrections (DOC) inmate in August 2000.  On July 15, 2008, he transferred to Waupun Correctional Institution (WCI), where he remained incarcerated at all times relevant to this action.  An Inmate Classification Report, dated July 9, 2008, indicates that Killebrew was transferred to WCI from Columbia Correctional Institution because: "Mr. Killebrew is currently restricted from using the stairs for six months.  In order to

---

[1] The defendants filed a partial summary judgment motion because at that time Killebrew had not signed an authorization for release of medical information and, as a result, they were unable to fully respond to his claims of excessive force or deliberate indifference.

[2] Relevant, admissible facts are taken from the Defendants' Proposed Findings of Fact, the Defendants' Supplemental Proposed Findings of Fact, the plaintiff's Proposed Facts dated March 17, 2010, and the plaintiff's affidavit dated June 18, 2010.

accommodate medical needs, CCI and WCI Security Directors have agreed on a move of Mr. Killebrew to WCI to serve his segregation disposition." (Plaintiff's Exhibit A).

On July 21, 2008, Nurse Practitioner Mary Gorske conducted a special needs assessment of Killebrew and determined that he had a spinal injury that made it difficult for him to urinate, but that he was able to walk in his cell without a wheelchair. Nurse Gorske did not reference any current special needs or restrictions related to "no stairs." On July 22, 2008, Nurse Mary A. Slinger completed a "Medical Restrictions/Special Needs," form DOC-3332B, which indicated that Killebrew was restricted to wheelchair use for distances (not in cell) from July 21, 2008, through July 21, 2009. On August 13, 2008, Nurse Gorske wrote an order related to a physical therapy evaluation to evaluate Killebrew's ability to navigate the stairs. On August 25, 2008, the physical therapist went to Killebrew's cell to conduct an evaluation of his strength and ability to climb stairs, but Killebrew refused the evaluation. On September 8, 2008, the physical therapist again went to Killebrew's cell to conduct an evaluation of his strength and ability to climb stairs and he also refused this evaluation. Due to Killebrew's refusal to cooperate with the physical therapy evaluation in August and September 2008, the WCI Health Services Unit (HSU) could not make a determination related to Killebrew's ability to use the stairs nor could they order a medical restriction related to his use of the stairs.

The Health and Segregation Complex (HSC) at WCI is comprised of several levels which are accessible by staircases and an elevator. All inmates housed in the HSC are subject to hands on escorts and restraints when out of their cells. According to Killebrew, he had a current "No Stair" restriction and, because of that restriction, he was transferred to WCI's HSC where there are elevators that could better accommodate his impairment. (Killebrew Aff. ¶ 3).

On October 4, 2008, while housed in the HSC at WCI, Killebrew watched Officer Jesse Jones ask several segregation officers, including Sergeant Benjamin Hilbert, if Killebrew had a stairs restriction and used the elevators. Plaintiff avers that this was "confirmed" but does not indicate who confirmed the information. Killebrew and Officer Jones then utilized the elevators to go from his housing range to the legal recreation room. (Killebrew Aff. ¶ 2).

Later on October 4, 2008, Officer Shawn Martin was escorting Killebrew from the legal recreation room back to his cell and, in order to get there, Killebrew needed to go up a small flight of stairs to get to the control center landing area and then down a half flight of stairs to the wing where his cell was located. When Officer Martin and Killebrew approached the stairs, Killebrew attempted to go towards the elevator. He refused to use the stairs and insisted he be allowed to use the elevator because he had a medical restriction against using stairs. The elevators located on the range are to be used only by inmates if they have a medical restriction authorized by HSU medical staff. Officer Martin was not aware of any current

medical restrictions related to Killebrew not using the stairs, and he indicated to Killebrew that the stairs were to be used. Killebrew refused to cooperate by stopping when Officer Martin tried to move toward the stairs. Officer Martin then contacted Sergeant Hilbert for assistance with the escort.

When Sergeant Hilbert arrived, he informed Killebrew he needed to use the stairs for the escort back to his cell but Killebrew again refused to move toward the stairs. The HSU would typically provide a copy of a DOC-3332b Medical Restriction Special Needs form detailing any special needs or restrictions to the Housing Unit Sergeant. In Hilbert's capacity as the Housing Unit Sergeant, he was not personally aware of a current medical restriction related to Killebrew not being able to use the stairs. Prior to the incident involving Killebrew and Officer Martin on October 4, 2008, Sergeant Hilbert was familiar with Killebrew and had prior interactions with him. Sergeant Hilbert had seen Killebrew use the stairs in the HSC without any assistance or problems, and had seen Killebrew use the hand rails on the staircases to pull himself forward. In October 2008, Sergeant Hilbert was not aware of any Medical Restriction/Special Needs forms related to Killebrew's use of the stairs in the HSC. There were no Medical Restriction/Special Needs forms related to Killebrew in the binder located in the sergeant's office.

The parties dispute what happened next. According to Killebrew, Sergeant Hilbert placed his two-way radio on a nearby table, walked up to him, jerked his head back, and stated "now walk." (Killebrew Aff. ¶ 5). Sergeant Hilbert carried him down

the stairs by his head while Officer Martin waited at the bottom of the stairs. (Killebrew Aff. ¶ 6). Sergeant Hilbert did not ask Killebrew to comply with directives after they made it to the control center landing and Killebrew did not tell Officer Martin he was alright after being carried down a flight of stairs by his neck. (Killebrew Aff. ¶¶ 10-11). According to the defendants, Officer Martin secured Killebrew's left arm and Sergeant Hilbert secured his right arm, and they assisted him to the staircase. At this point, Killebrew buckled his legs and refused to stand on his feet. Sergeant Hilbert gave Killebrew a verbal directive to cooperate with the escort, and he refused. To avoid injury to Killebrew and escorting staff, and to complete the escort, it was necessary for Officer Martin and Sergeant Hilbert to carry Killebrew up the stairs. At the landing he refused to stand. They then escorted Killebrew by securing his head, neck and chin and with Sergeant Hilbert at his head and Officer Martin controlled the remainder of his body to avoid injury. Sergeant Hilbert secured Killebrew's head, neck, and chin by using his hands and arms to pull his head into his chest. This tactic was done in accordance with his training and was done to stabilize Killebrew's head and neck to protect him from injury during the escort. Officer Martin and Sergeant Hilbert then assisted Killebrew to the lower B range where his cell was located and Killebrew lowered his feet and stated he was fine.

Nurse Sandra Jackson was in the HSC to see another patient when she observed Killebrew refusing to walk up the stairs with two officers on October 4,

2008. Nurse Jackson heard Killebrew state, "I have papers that say I don't climb stairs." She observed the officers assist Killebrew up the stairs, and she did not observe the officers using excessive force other than what was required to transport Killebrew safely to his cell, nor did she observe the officers handling him in a rough manner. After Killebrew was returned to his cell, he called the security bubble to complain of chest pain.

At 8:15 p.m., Nurse Jackson arrived at Killebrew's cell door to assess his medical complaints and she observed him standing in his cell without difficulty. His affect was irate and angry. Killebrew complained of back spasms and said he needed an x-ray. Nurse Jackson advised Killebrew to stop yelling and to relax so that she could conduct a nursing assessment. In this instance, it was difficult, if not impossible, to conduct a thorough assessment without Killebrew's cooperation. He refused to cooperate with Nurse Jackson when she attempted to conduct a medical assessment so she decided to come back when he was calmer.

At 9:35 p.m., Supervising Officer Gwen Schultz was called to the HSC and advised that Killebrew was holding his bedtime medications, complaining that his back hurt, and wanted to see a supervisor. Officer Schultz observed Killebrew laying on his bed at the back of his cell holding his inhaler and some pills in his hand. He was yelling that he was in pain and wanted to see a doctor. Officer Schultz told Killebrew that she could assist him in getting medical attention as soon as he came

to the cell door to be restrained.[3]   Killebrew continued to yell that he was unable to come to the door because he was having back spasms and could not move.  Officer Schultz was concerned that Killebrew moved from his bed to his cell door to receive the medications, so he was ambulatory.  Also, the inhaler had a metal part that could be used as a weapon.

Officer Schultz met with Captain Debra Gempeler away from Killebrew's cell, and advised her that Killebrew was in his cell asking for a doctor and holding his medication and an inhaler, and that he refused to move to his cell door to be restrained, although he had just been on his feet to get his medication.  Captain Gempeler advised Officer Schultz to assemble a cell entry team of officers and possibly use chemicals for staff safety.  Captain Gempeler was concerned that Killebrew may harm himself with the medication and/or inhaler. She was also concerned he may have a medical emergency and require immediate medical attention.  When Captain Gempeler arrived at Killebrew's cell, Officer Schultz had gathered the cell entry team members.  Captain Gempeler attempted to persuade Killebrew to stand and come to the cell door to be restrained, but he refused.

The cell entry team consisted of Officers Billy Pontow, Joseph Sutton, Shawn Martin, Jesse Jones and Stefany Szemraj.  Officer Martin ordered Killebrew to come to the cell door, but he refused.  Officer Schultz determined that a soft cell entrance,

---

[3] For the safety and security of staff and the inmate, restraints are a necessary safety measure and all inmates are restrained to their cell door while being examined by HSU staff who come to the HSC to assess inmates.  The restraints typically consist of waist belt and handcuffs.

which consists of two staff members entering the cell with pads to subdue the inmate using the pads, was appropriate. This type of entrance was used because Officer Schultz did not know the extent of Killebrew's medical problems and, if he cooperated with applying the restraints, the use of the electronic shield or other pads would not be necessary. As the team entered his cell, Officer Pontow secured Killebrew's left arm and Officer Sutton secured his right arm, both using pads to ensure the safety of staff and the inmate. Officer Jones restrained Killebrew's hands and double locked the handcuffs, and then restrained his legs. All of the restraints were used in accordance with training protocols and the officers used only enough force necessary to restrain Killebrew so that a nursing assessment could be conducted to ensure his well-being.

After the cell entry team placed restraints on Killebrew, Captain Gempeler entered the cell and supervised as the nurse assessed his medical condition. In order to protect the nurse in case the inmate became disruptive or violent, Officer Schultz held an electronic shield over the inmate while Nurse Jackson made her assessment. The electronic shield was not activated at any time during this incident. Nurse Jackson attempted to give Killebrew an ice bag but he threw it over the heads of security officers who were also in the cell and the ice bag flew out into the hallway. Killebrew would have had to exert his back muscles with some velocity for the ice bag to go over the heads of the officers and out into the hallway of the cell housing unit. Nurse Jackson attempted to take Killebrew's vital signs, but he continued to

yell and flexed his arm causing an inability to take his blood pressure. She was able to take his pulse, which was normal. When she attempted to move his legs to assess his low back pain, Killebrew yelled, "Don't move me," although she observed Killebrew ambulating in his cell prior to his laying on the floor. Nurse Jackson concluded that Killebrew's complaints of back pain were exaggerated, and she noted to re-assess him when he was less angry and more cooperative.

According to Killebrew, Nurse Jackson mocked him for being in pain by stating, "I don't think your back is hurting, I just think your feelings are more hurt, so you just need to calm down and relax," and then walked away denying him medical care. (Killebrew Aff. ¶ 7). Killebrew also states that Nurse Jackson left him on his cell floor in pain, not offering him any pain reliever medication to curb the discomfort.

Upon completion of the nursing assessment, staff were advised to exit the cell and the restraints were removed. The team exited the cell without injury to Killebrew or staff. After security and nursing staff left Killebrew's cell, he continued to yell and complain that he wanted to see a doctor. Throughout the incident on October 4, 2008, Officers Sutton, Pontow, Martin, Jones, and Szemraj and Supervising Officer Schultz used only the amount of force that was required to ensure the safety of staff and the inmate, and the electronic shield was not used, nor was any incapacitating agent used.

On October 24, 2008, Killebrew submitted Offender Complaint WCI-2008-27950, wherein he alleged that the nurse refused to treat him on

October 4, 2008. On November 4, 2008, the WCI Reviewer dismissed WCI-2008-27950. On November 7, 2008, Killebrew appealed the decision by signing a Request for Corrections Complaint Examiner (CCE) Review (Form DOC-405) and filed a carbon copy of the form with the CCE Office. Pursuant to the instructions stated on Form DOC-405, the inmate is required to file the original of the form because carbon copies can deteriorate during storage and may become illegible. In a memo dated November 14, 2008, the CCE Office notified Killebrew that a carbon copy was not acceptable, and that he must file the original Form DOC-405. An appeal of the Reviewer's Decision must be received and accepted by the CCE ten calendar days after the reviewing authority's decision. The CCE Office did not receive the original form DOC-405 until November 19, 2008. The CCE Office found that Killebrew did not file the original Form DOC-405 within ten days, and that he did not offer good cause for the late submission. The appeal was, therefore, dismissed on November 20, 2008, as untimely.

Claims against state employees and notices of claims are required to be filed with the Attorney General pursuant to Wis. Stat. § 893.82. Based upon a search of records concerning the service of notices of claim on the Attorney General and the copies of the notices of claim served upon the Attorney General and state, staff is unable to locate a notice of claim served pursuant to Wis. Stat. § 893.82, on behalf of Killebrew against the defendants, with regard to the present action.

# IV.  ANALYSIS

The defendants contend that: (1) Killebrew did not properly exhaust his administrative remedies with respect to Offender Complaint WCI-2008-27950; (2) Sergeant Hilbert and Officer Martin's use of force was restrained and appropriate and did not violate the Eighth Amendment; (3) Officers Gempeler, Schultz, Martin, Sutton, Jones, Pontow, and Szemraj did not use excessive force against Killebrew; (4) they were not deliberately indifferent to Killebrew's medical needs; (5) Killebrew's ADA and RA claims should be dismissed; (6) several defendants lacked the requisite level of personal involvement to be liable in a § 1983 claim; and (7) Killebrew's state law claims should be dismissed because he failed to comply with the notice of claim statute, Wis. Stat. § 893.82.

Killebrew contends that:  (1) there is proof he had a "no stairs" restriction and that he was transferred to WCI so he could use the HSC elevators, and his daily activities are now limited due to defendants' unjustifiable excessive force and deliberate indifference; (2) the untimely exhaustion of administrative remedies was not his fault; and (3) the defendants were deliberately indifferent to plaintiff's serious medical needs in that they denied or delayed access to medical attention.

## A.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 (PLRA), provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999)). Section 1997e applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). Exhaustion is an affirmative defense, and the burden of proof is on the defendants. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

In order to use the DOC's Inmate Complaint Review System, an inmate must file a complaint with the inmate complaint examiner (ICE) within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §§ DOC 310.07(1) & 310.09(6). Complaints submitted later than fourteen days after the event may be accepted for good cause. Wis. Admin. Code § DOC 310.09(6). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§ DOC 310.11(2) & 310.11(11). The appropriate reviewing authority makes a decision within ten days following receipt of the recommendation. Wis. Admin. Code

§ DOC 310.12. Within ten days after the date of the decision, a complainant dissatisfied with a reviewing authority decision may appeal that decision by filing a written request for review with the CCE. Wis. Admin. Code § DOC 310.13(1). The CCE reviews the appeal and makes a recommendation to the Secretary of the DOC. Wis. Admin. Code § DOC 310.13(6). The Secretary may accept, adopt, or reject the CCE's recommendation, or return the appeal to the CCE for further investigation. Wis. Admin. Code § DOC 310.14(2).

In this case, Killebrew filed a timely offender complaint, the ICE recommended dismissal, and the appropriate reviewing authority affirmed that dismissal on November 4, 2008. He then had ten days to file an appeal to the CCE. On November 7, 2008, Killebrew signed his appeal to the CCE, however, one week later on November 14, 2008, Killebrew received a memo informing him that his appeal was not accepted because he sent in the carbon copy, not the original as required under DOC rules. Killebrew was informed that he must file the original. The CCE Office received the original on November 19, 2008. Then, because the original was filed more than ten days after the November 4, 2008, dismissal at the institution level, and because Killebrew offered no good cause for the late submission, the appeal was dismissed as untimely.

As indicated, the PLRA requires proper exhaustion, *see Woodford*, 548 U.S. at 88, 93; *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at

the time, the prison's administrative rules require"), and the ICRS requires that an inmate file an appeal to the CCE within ten days of dismissal of the offender complaint. Killebrew's appeal was dismissed as untimely because it was not properly received until five days after the deadline and he did not provide good cause for the late submission. As an initial matter, the CCE's reasoning that he did not provide good cause for the late submission is curious since Killebrew was following their instructions in sending in the original CCE appeal form. More importantly, Killebrew asserts that he did send in the appeal in a timely manner, but that it took six days between when he placed it in the mailbox and when it was received at the CCE Office. *See Dole*, 438 F.3d at 812-13 (inmate grievance filed when placed in prison mailbox, or hands of guard, for mailing). The CCE Office received the original appeal on November 19, 2008, and six days before that was November 14, 2008, or only ten days after the Reviewer's Decision dismissing the grievance. The record reveals that Killebrew filed a timely appeal to the CCE; he did all that was required to exhaust and, therefore, the court concludes that he did exhaust his administrative remedies.

## B.    Excessive Force

For Killebrew to succeed on his excessive force claim, he must demonstrate that the defendants acted "maliciously and sadistically" to cause him harm. *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010); *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). The extent of injury is one factor that may suggest "whether the use

of force could plausibly have been thought necessary" in a situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* (quoting *Whitley*, 475 U.S. at 321) (internal quotations omitted).

### 1.     Escort to Stairs:  Sergeant Hilbert and Officer Martin

The parties dispute this incident.  According to Killebrew, Sergeant Hilbert placed his two-way radio on a nearby table, walked up to Killebrew, jerked his head back, and stated "now walk."  Sergeant Hilbert carried him down the stairs by his head as Officer Martin waited at the bottom of the stairs.  Sergeant Hilbert did not ask Killebrew to comply with directives after they made it to the control center landing and Killebrew did not tell Officer Martin that he was alright.  According to the defendants, Officer Martin secured Killebrew's left arm and Sergeant Hilbert secured his right arm, and they assisted Killebrew to the staircase at which time Killebrew buckled his legs and refused to stand on his feet.  Killebrew refused to cooperate with the escort and, to avoid injury complete the escort, Officer Martin and Sergeant Hilbert carried him up the stairs.  At the landing, he refused to stand and they then

escorted Killebrew by securing his head, neck and chin, with Sgt. Hilbert at his head and Officer Martin controlled the remainder of his body to avoid injury. Officer Martin and Sergeant Hilbert then assisted Killebrew to the lower B range where his cell was located and Killebrew lowered his feet and stated he was fine.

The parties' factual disputes regarding this incident preclude the court from deciding in favor of either party at the summary judgment stage.

## 2. Cell Entry: Officers Gempeler, Schultz, Martin, Sutton, Jones, Pontow, and Szemraj

The undisputed facts reveal that Killebrew would not return his medication or inhaler and that the defendants had institution security, as well as officer and inmate safety reasons, for requiring him to do so. When he would not, the defendants entered his cell in the manner of a soft cell entry. Immediately afterwards, Nurse Jackson attempted to evaluate Killebrew. The undisputed facts reveal that the cell entry was conducted in the least physical way possible and the record does not support a finding that the cell entry was done maliciously. As such, this claim will be dismissed.

## C. Deliberate Indifference to a Serious Medical Need

A deliberate indifference claim requires both an objectively serious risk of harm and a subjectively culpable state of mind. *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A deliberate indifference claim based on inadequate medical treatment requires, to satisfy the objective element, a medical

condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards*, 478 F.3d at 830-31 (quoting *Greeno*, 414 F.3d at 653). The subjective component of a deliberate indifference claim requires that the prison official knew of "a substantial risk of harm to the inmate and disregarded the risk." *Greeno*, 414 F.3d at 653 (citing *Farmer*, 511 U.S. at 834). Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference. *Edwards*, 478 F.3d at 831 (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). Yet, a plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" a medical condition. *Id.* (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

In this case, Officer Martin and Sergeant Hilbert assert that they did not know that there was a current "no stairs" order in place for Killebrew. It is possible that they did not know. However, the record reveals that on July 15, 2008, Killebrew was transferred to the HSC at WCI for the very reason that there was a "no stairs" restriction in place and that he could use the elevator while in segregation at WCI. The July 9, 2008 Inmate Classification Report indicates that Killebrew was on a six-month "no stairs" restriction. Moreover, it is undisputed that Killebrew had a restriction for wheelchair use in place. Immediately prior to the incident on

October 4, 2008, Killebrew told both Sergeant Hilbert and Officer Martin that there was a current "no stairs" order in effect. Finally, Killebrew asserts that Sergeant Hilbert saw him take the elevator with another officer earlier that day.

Correctional officers' failure to follow medical orders can result in liability under the Eighth Amendment. *See Zentmyer v. Kendall County, Ill,*, 220 F.3d 805, 812 (7th Cir. 2000). The parties' disputes on this claim cannot be resolved at summary judgment.

However, the facts do not support an inference that Nurse Jackson was deliberately indifferent when she tried to treat Killebrew after the cell entry. Rather, it is undisputed that when she entered the cell and tried to evaluate him, he rejected any medical care at that time. Accordingly, Killebrew's medical care claim against Nurse Jackson will be dismissed.

## D.    ADA and RA Claims

Title II of the Americans with Disabilities Act of 1999 (ADA), 42 U.S.C. § 12131, *et seq.*, provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Title II applies to state prison inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998). However, Killebrew does not claim he was treated differently because of a disability. Moreover, any claim for injunctive relief

is moot because he is no longer at WCI. *See Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004); *see also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996). Finally, because Killebrew does not claim any intentional discrimination based on a disability, he has no claim for damages based on past conduct. *See Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Ross*, 486 F.3d 267, 278 (7th Cir. 2007).

> Section 504 of the Rehabilitation Act states:
>
> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, . . . be denied benefits of . . . any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a). A claim under Section 504 has four elements: (1) a qualified individual with a disability; (2) otherwise qualified for the benefit sought; (3) discriminated against solely by reason of disability; and (4) the program or activity receives federal financial assistance. *Grzan v. Charter Hospital of Northwest Ind.*, 104 F.3d 116, 119 (7th Cir. 1997). However, as indicated, and as the parties' summary judgment materials make clear, Killebrew does not claim he was discriminated against solely because of a disability. As such, Killebrew's claims for relief under the ADA and RA will be dismissed.

## E.    State Law Claims

Defendants contend that Killebrew may not proceed on state law based claims because he failed to file appropriate notices of claim under state law. Wisconsin Statute 893.82(3) provides:

> Except as provided in sub. (5m), no civil action or civil proceeding may be brought against any state officer, employee or agent for or on account of any act growing out of or committed in the course of the discharge of the officer's, employee's or agent's duties, ... unless within 120 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written notice of a claim stating the time, date, location and the circumstances of the event giving rise to the claim for the injury, damage or death and the names of persons involved, including the name of the state officer, employee or agent involved.

It is undisputed that Killebrew has not filed a Notice of Claim with the attorney general in accordance with Wis. Stat. § 893.82 regarding his state law claim. "Where the plaintiff has failed to comply with this notice of claim statute, the court lacks jurisdiction to hear the claim." *Williams v. Nelson*, 398 F. Supp. 2d 977, 992 (W.D. Wis. 2005) (quoting *Saldivar v. Cadena*, 622 F. Supp. 949, 959 (W.D. Wis. 1985)). Thus, the court will grant defendants' motion for summary judgment as to Killebrew's state law claims.

## F.    Summary

In sum, Killebrew's Eighth Amendment excessive force and deliberate indifference to a serious medical need claims against Sergeant Hilbert and Officer Martin survive. The remaining claims and defendants will be dismissed.

**IT IS ORDERED** that the plaintiff's motion for summary judgment (Docket #65) be and the same is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket #88) be and the same is hereby **GRANTED in part and DENIED in part** as described herein.

**IT IS FURTHER ORDERED** that the plaintiff's Eighth Amendment excessive force and deliberate indifference to a serious medical need claims against defendants Hilbert and Martin survive. The remaining claims and defendants be and the same are hereby **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 17th day of March, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge